UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
: 
RIF LINE INTERNATIONAL SpA  :
:
       Petitioner,  :      24-_____
- against -  :
:
INTEGR8 FUELS PTE LTD  :
:
       Respondent.  :
:
------------------------------------------------------X

## DECLARATION OF FRANCESCO ISOLA
## IN SUPPORT OF PETITION TO ENJOIN ARBITRATIONS

I, Francesco Isola, declare, under the penalty of perjury of the laws of the United States of America, as follows:

1.    I hold the position of Chief Executive Officer of RIF Line International SpA ("RIF International") and am authorized to make this declaration on behalf of RIF International.

2.    In my capacity as CEO of RIF International, I have personal knowledge of the facts set forth herein and those which form the basis of this Petition which seeks to enjoin various arbitrations commenced against RIF International by Integr8 Fuels Pte. Ltd. ("Integr8").

3.    RIF International was formed in March 2018 under the laws of Italy. At all times, its principal place of business has been in Rome, Italy. From shortly after its inception until approximately April 2022, RIF International operated as a vessel chartering company. Also, in 2018, RIF International acquired the entire share capital of RIF Lines Italy SpA ("RIF Italy") a company which, at all times, was a freight forwarder of cargo in international trade. At all times, RIF International owned 100% of the shares of RIF Italy. To my understanding RIF Lines has nothing to do directly with this dispute.

4.     In addition to the foregoing, I was at all material times the President of Kalypso Compagnia di Navigazione SpA ("Kalypso"). Kalypso was incorporated in Italy in December, 2021 and became operational in April, 2022. Kalypso's principal place of business has always been in Genoa, Italy. Kalypso is a vessel chartering company and an international shipping line. Since April 2023, RIF International owned seventy percent (65%) of the shares of Kalypso, the other thirty percent (35%) of the shares are owned by third parties not affiliated with RIF International. Once Kalypso was formed, RIF International no longer chartered new vessels. Instead, the new charters were entered into in the name of Kalypso. The intention was that RIF International would exit the chartering business and become the holding company of 100% of the shares of RIF Line Italia and 65% of the shares of Kalypso.

5.     For the sake of clarity, RIF International and Kalypso were always separate entities. I was the only officer/director who overlapped between the two companies. The companies maintained separate offices, one in Genoa and the other in Rome. They had different email addresses, telephone numbers, and websites. They maintained separate corporate and financial records, accounts, and auditors, and were independent profit centers. While the two companies used the same outside consultant, Mr. Luca Scagliarini, to arrange fuel for the ships for both entities while RIF Line was winding down the last of it chartering operations (three ships were on time charters which didn't expire until sometime after April 2022 when Kalypso began operating), he did so from separate email accounts, one for RIF International and one for Kalypso, and made his requests specifically on behalf of the company chartering the vessel.

6.     This dispute arises from four demands for arbitration sent by Integr8 to RIF International concerning allegedly unpaid invoices from Integr8 for fuel ("bunkers") supplied by

Integr8 ("stemmed") to four vessels chartered by Kalypso, and which were ordered by Kalypso. (Attached as Exhibit A are the Integr8 arbitration demands).

7. In each of the instance about which Integr8 complains, Mr. Scagliarini ordered the bunkers on behalf of Kalypso only, using his Kalypso email address. (Attached hereto as Exhibit B are the emails which Mr. Scagliarini sent to Integr8 and other bunker suppliers requesting quotes for the supply of the requested fuel which are the subject of the arbitration demands). Exhibit B clearly shows that the ordering party was Kalypso in each case. The name RIF International does not appear anywhere in the correspondence.

8. Integr8 appears to contend that RIF International agreed to be a purchaser of the bunkers along with Kalypso. This is not correct. It is my understanding that Integr8 unilaterally included RIF International in the Bunker Confirmation Notes and Invoices for these stems (attached to each demand in Exhibit A), without Mr. Scagliarini's knowledge, or the knowledge or agreement of anyone authorized to act for RIF International. RIF International never agreed to be a party to Kalypso's contracts with Integr8, or to arbitrate disputes with Integr8 in regard to stems for Kalypso's account, the invoices were sent to the attn of Kalypso accounting department without involving Rif Line International in any correspondence. Furthermore, Mr. Scagliarini was not authorized to bind or otherwise involve RIF Line in contracts which were for Kalypso's account, or vice versa.

9. In late 2023, Kalypso began to encounter significant financial difficulties. Even with a significant cash infusion from RIF International as shareholder, Kalypso was unable to pay its bills. On December, 2023, Kalypso entered voluntary liquidation in Italy, and is currently under the supervision of the court appointed Liquidator who is charged with winding down the company. The largest single creditor in the Kalypso liquidation is RIF International.

10. No one from RIF International was aware that Integr8 had included them as purchasers in the bunker confirmations and invoices for Kalypso stems until Integr8 arrested the vessel BURGUNDY, in Italy on or about December 12, 2023, in a suit instituted there against Kalypso. At that time, the Integr8 Bunker Confirmation Note and Invoices were shown to me and, although the suit was against Kalypso as the charterer of the BURGUNDY, I learned for the first time that Integr8 had unilaterally identified RIF International as one of the purchasers of the fuel, in addition to Kalypso and others.

11. In September, 2023, I was contacted by Mr. Giuseppe Azzena and Mr. Duncan Mc Gregor of Integr8 to discuss Kalypso's unpaid invoices. I explained to Mr. Azzena and Mr. Mc Gregor that Kalypso did not have the funds to pay these invoices. Mr. Azzena and Mr. Mc Gregor asked whether RIF International would agree to guarantee the payment of these invoices. As CEO of RIF International, I refused. However, it seems inconsistent to me that Integr8's Mr. Azzena, and Mr. Mc Gregor authorized by Integr8 to negotiate these invoices with me, would ask for a guarantee from RIF International if it was Integr8's belief that RIF International was already an authorized purchaser and party to those contracts. Mr. Azzena's and Mr. Mc Gregor's comment only reenforces my belief that Integr8 also understood that RIF International had not authorized anyone to include RIF International as a party to these contracts.

12. RIF International did not authorize anyone to include them as purchasers of the bunkers which are the subjects of Integr8's arbitration demands. Integr8 should be enjoined from further pursuing these arbitrations.

The foregoing is true and correct under penalty of perjury of the laws of the United States pursuant to 28 USC § 1746.

Dated: April __26__, 2024

_____

Francesco Isola