CHRYSLER BUILDING
405 LEXINGTON AVE., 26TH FLOOR
NEW YORK, NY 10174
212-354-0025
FAX: 212-869-0067

TL@TISDALE-LAW.COM

# TISDALE & NAST
LAW OFFICES, LLC

10 SPRUCE STREET
SOUTHPORT, CT 06890
203-254-8474
FAX: 203-254-1641

WWW.TISDALE-LAW.COM

July 17, 2024

*Via ECF*
Honorable Margaret M. Garnett
United States District Court
Southern District of New York
40 Foley Square, Room 2102
New York, NY 10007

      Re:    **RIF Line International SpA v. Integr8 Fuels Pte Ltd.**
              **24-CV-3248-MMG**
              **T&N File No. 3094**

Dear Judge Garnett,

      We are counsel for the Petitioner RIF Line International SpA ("RIF International" or "Petitioner") in the above cited matter and write in accordance with the Court's Order issued at the hearing of Petitioner's Order to Show Cause on July 10, 2024.

      As the Court is aware, each "stem" or supply of fuel was a separate negotiation and contract. Each of the negotiations which bring the parties to this Court began with an email message from Luca Scagliarini to numerous bunker suppliers written on behalf of Kalypso Compagnia di Navigazione SpA ("Kalypso"). Those email messages included nearly all the details for the contract, the name of the Buyer ("Kalypso"), the name of the ship to be supplied, the quantity and quality of the fuel or "bunkers" to be supplied (which varies from vessel to vessel), the international standards which the bunkers needed to comply with, the dates for delivery ("laycan"), and the name of the local agents which the Buyer would engage to facilitate the stem, among other details. In response to that, Mr. Scagliarini requested that the suppliers provide "your best and competitive fuel price." (ECF 4-2, pg. 1 of 14). One needed only to provide the price and payment terms. Mr. Scagliarini's email may best be described as a provisional offer in which some terms remained for negotiation.

      Once received, the interested suppliers called and/or texted Mr. Scagliarini via What's App to discuss potential prices and payment terms. Because of the volatility of the market, prices were often open for final acceptance by Kalypso for short periods of time, between 5 and 30 minutes. In the typical transaction, Mr. Scagliarini would then present Mr. Isola with 2 or 3 of the best offers. Mr. Isola would then instruct Mr. Scagliarini to respond to one or more of the suppliers providing those prices, with a lesser price and occasionally better payment terms. That information

was sent to one of those suppliers for its final acceptance or rejection. If rejected, it was offered to the next supplier. The supplier either accepted or rejected this final offer. Throughout this period, the only party identified as "Buyer" was Kalypso

Luca Scagliarini's emails to the bunker suppliers supplemented with the final telephone and text message are the offers, which the Buyers accepted in their final text or telecon. At that point, an enforceable contract came into existence between Kalypso and Integr8 Fuels Pte, Ltd. ("Integr8"). The agreement was later verified by Integr8 in the Confirmation Order. Only after the agreement was forged did Integr8 issue the unilaterally insert the name RIF International as a Buyer, without any discussion or notification to Kalypso or RIF International, into the Confirmation Order.

**UCC section 2-207 rather than section 2-201 applies since the parties have agreed a contract exists.**

Integr8 does not dispute that a contract exists between Integr8 and Kalypso. (See, Integr8's Memo in Response to Order to Show Cause, ECF 13). As a result, Section 2–201(2) is not applicable. *See Daisy Indus. v. Kmart Corp.*, No. 96 CIV. 4211 (RLE), 1999 WL 1043964, at *7 (S.D.N.Y. Nov. 17, 1999) (UCC section 2-201 "deals solely with the question of whether an enforceable contract exists in the face of a Statute of Frauds defense. It has no application to a situation such as this, in which both parties have conceded that a contract does exist and the dispute goes only to the terms." *Id.,* at *7. *See St. Charles Cable TV, Inc. v. Eagle Comtronics,* Inc., 687 F.Supp. 820, 828 (S.D.N.Y.1988) (citing *Marlene Industries Corp. v. Carnac Textiles, Inc.,* 45 N.Y.2d 327, 380 N.E.2d 239, 408 N.Y.S.2d 410 (1978)).

Thus, the appropriate section for consideration in this dispute is section 2-207, which states:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
(a) the offer expressly limits acceptance to the terms of the offer;
(b) they materially alter it; or
(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

**Including RIF International was a material alteration of the contract**

Official Comment 4 to the U.C.C. § 2–207 states that a term materially alters a contract if its inclusion would "result in surprise or hardship if incorporated without express awareness by the other party ...." U.C.C. § 2–207 cmt. 4 (McKinney's 1993). Here, the fact that it is a new party being inserted into a contract to which it is otherwise not a party, would certainly represent the ultimate in surprise and hardship.

Official Comment 4 provides examples of "typical clauses" that materially alter a contract. Most of the examples set forth in the comment significantly alter standard industry practice such that a party not used to operating under the additional terms would be surprised. *See Suzy Phillips Originals, Inc. v. Coville, Inc.,* 939 F.Supp. 1012, 1017 (E.D.N.Y.1996), *aff'd,* 125 F.3d 845 (2d Cir.1997)

Nothing could be a more material alteration of a contract than to be bound to it as a non-party. That adding RIF International represents a material alteration is common sense. Clearly, if inserting an obligation to arbitrate a dispute between contracting parties is a material terms, (see *Marlene Industries,* 45 N.Y.2d at 333), attempting to require a non-party to arbitrate under that contract is even more material.

**Integr8 failed to comply with the requirements of section 2-207**

No doubt, Integr8 will argue that, by accepting performance, RIF International accepted the material change. That is not the law. First, there is nothing in the record that RIF International accepted anything. The bunkers were ordered by Kalypso, the deal negotiated and agreed with Kalypso, and the bunkers accepted by and delivered to Kalypso. RIF International had nothing to do with the deal, thus RIF International did not accept anything.

Second, pursuant to paragraph 3 of section 2-207, when the added material terms are not agreed, the contract consists of the terms which are agreed (here, the contract includes everything excluding RIF International) and whatever the UCC section 2 provides, which, in this case is nothing. (See Comment 6 to UCC § 2-207). Thus, pursuant to section 2-207, RIF International is not part of the Kalypso/Integr8 contracts which are the subject of this dispute.

**Even if it did apply, Intergr8 failed to comply with Section 2-201.**

Finally, Integr8 will likely argue that no contract was formed until it issued the Confirmation Order and then attempt to argue that section 2-201 applies instead of section 2-207, despite the fact they admit a contract was formed. In that case, the newly inserted terms would become part of the contract unless objected to by Kalypso within 10 days of receipt. Paragraph 2 of section 2-201 states the following:

> (2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know

3

its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

Even here, Integr8 fails. In each stem which is the subject of this dispute, the Integr8 Confirmation Order attempting to add RIF International as a Buyer, was issued less than 10 days before the stem took place, as the chart below illustrates.

| Vessel/Port | Confirmation Date & Cite | Delivery Date & Cite |
|---|---|---|
| ZHONG GU PENG LAI (NING BO) | 8/23/23 (ECF 17-1, p. 64) | 8/29-30/23 (ECF 17-1, p. 73, 74) |
| ZHONG GU PENG LAI (HABANTOTA) | 9/14/23 (ECF 17-1, p. 88) | 9/20/23 (ECF 17-1, p. 95) |
| ZHONG GU YING KOU (HABANTOTA) | 8/28/23 (ECF 17-1, p. 75) | 9/02/23 (ECF 17-1, p. 83) |
| ZHONG GU LIN YI (ZHOUSHAN) | 7/12/23 (ECF 17-1, p. 45) | 7/16/23 (ECF 17-1, p. 52) |
| ZHONG GU XIONG AN (ZHOUSHAN) | 6/27/23 (ECF 17-1, p. 35) | 6/30/23 (ECF 17-1, p. 43-44) |
| ZHONG GU XIONG AN (HABANTOTA) | 7/14/23 (ECF 17-1, p. 53) | 7/19/23 (ECF 17-1, p. 60) |

In that case, Integr8 failed to comply with paragraph 2 of section 2-201, and the attempt to insert RIF International into the Kalypso/Integr8 contract fails.

Moreover, subparagraph 2 of section 2-207 requires that, for the previously unagreed terms to become part of the contract, the recipient of the confirmation must have "reason to know its contents". Both Mr. Scagliarini and Mr. Azzena from Integr8 have attested to what terms were important to them in these negotiations and what was considered important in their review of the Confirmation Order. The insertion of RIF International as a Buyer was not known by Mr. Scagliarini, nor was it ever brought to his attention before the contract was performed.

Finally, all of section 2-201 is premised on the idea that the Merchants are authorized to agree to the terms. For all the reasons previously provided, Mr. Scagliarini was not authorized by RIF International to bind RIF International to the contracts for the sale of the fuel to Kalypso which are the subject of this dispute.

We appreciate the Court's indulgence and are available for further argument if the Court so desires.

Respectfully,

_____/s/_____
Thomas L. Tisdale

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2024 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

                                                                     /s/
                                                Thomas L. Tisdale